As discussed above, the Commissioner accepted, processed, audited, and used the Olpins' joint return for at least a year after notifying Mrs. Olpin of the signature omission. It is uncontroverted that, if the tax forms had been returned to Mr. Olpin at any time, he would have signed and resubmitted them. Having denied Mr. Olpin the right to sign his return before Mrs. Olpin filed a separate return at the Commissioner's suggestion, the Commissioner may not now argue that Mr. Olpin "lost" his joint filing status because he did not sign the joint return before the separate return was filed. The Tax Court erred in granting summary judgment in favor of the Commissioner and in denying summary judgment in favor of Mr. Olpin on this issue.

 The Commissioner argues that, even if Mr. Olpin is deemed to have signed the return before the IRS reversed its processing of the joint return, his right in 1995 to a "married filing jointly" tax status is still at issue because there is a genuine issue of material fact regarding *Mrs.* Olpin's intent to file a joint return, as evidenced by her filing of a separate return in 1998. We disagree. Mrs. Olpin's intent to file a joint return is not at issue here—in fact, she is not a party to this case. Mr. Olpin had the burden to show that the deficiency notice is erroneous because the Commissioner used the wrong tax status for him; i.e., that in 1995 he had the right to file a joint return and he intended to file a joint return. "The determination of whether a return should be treated as joint depends upon whether the spouse against whom the joint liability is asserted intended to file a joint return." *United States v. Guy,* 978 F.2d 934, 939–40 (6th Cir.1992). Conversely, when the Commissioner seeks to impose more taxes by asserting individual liability against a married taxpayer, the issue hinges on whether that individual intended to file a separate return. All the evidence in the record conclusively establishes that Mr. Olpin had the right, intended, and honestly attempted to file a joint income tax return for the 1995 tax year. He submitted joint state and federal returns and began making payments on the joint tax liability; no other returns were filed by either him or Mrs. Olpin in 1996; he signed sworn extensions of time in which to file a joint return; and he met all the statutory requirements for filing a joint return. He established, as a matter of law, that a deficiency solely based on a married-filing-separately status was erroneous.

Therefore, we REVERSE the grant of summary judgment in favor of the Commissioner and REMAND with instructions to enter summary judgment in favor of Mr. Olpin.

**Christopher Todd WILLIAMS, Petitioner–Appellant,**

v.

**Gary GIBSON; Attorney General of the State of Oklahoma, Respondents–Appellees.**

**No. 00–6014.**

United States Court of Appeals, Tenth Circuit.

Jan. 30, 2001.

Gloyd L. McCoy, Coyle & McCoy, Oklahoma City, OK, for Petitioner–Appellant.

Diane L. Slayton, Assistant Attorney General, (W.A. Drew Edmondson, Attorney General, on the briefs), Oklahoma City, OK, for Respondents–Appellees.

Before SEYMOUR, Chief Judge, KELLY, and HENRY, Circuit Judges.

## ORDER ON PETITION FOR REHEARING

PAUL KELLY, Jr., Circuit Judge.

Respondents–Appellees petition for rehearing and rehearing en banc. Previously, we held that Petitioner–Appellant Christopher Todd Williams' federal habeas petition was timely because his appeal to the Oklahoma Court of Criminal Appeals (OCCA) from the denial of state post-conviction relief was "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2), thereby tolling the one-year limitation period in § 2244(d). *Williams v. Gibson,* 229 F.3d 1310, 1312 (10th Cir.2000). In so holding, we concluded that Mr. Williams' failure to file a petition in error and supporting brief as required by OCCA Rule 5.2(C)(2) merely constituted a procedural bar, rather than a jurisdictional bar, and therefore Mr. Williams was entitled to toll until the OCCA dismissed his appeal. *Id.* at 1311–12. We relied upon the plain language of the rule which states: "Failure to file a petition in error, with a brief, within the time provided, shall constitute a procedural bar for this Court to consider the appeal." Rule 5.2(C)(5).

■ During the course of this appeal, Respondents–Appellees have focused on Rule 5.2(C)(5). In support of their petition for rehearing, however, they have submitted supplemental authority which establishes that, despite the language of the rule, the requirement of filing a petition in error within thirty days from the entry of the state district court's judgment is statutory and jurisdictional based upon Okla. Stat. Ann. tit. 22, § 1087.[1] *Weatherford v. State,* 13 P.3d 987, 988 n. 1 (Okla.Ct.Crim. App.2000). Of course, we defer to the Oklahoma Court of Criminal Appeals on this point and we grant the petition for rehearing in order to modify the rationale of our earlier disposition to conform with the OCCA's interpretation of its rule. The outcome, however, does not change and the petition for rehearing is denied in all other respects.[2]

---

**1.** Okla.Stat.Ann. tit 22, § 1087 provides in pertinent part:

A final judgment entered under this act may be appealed to the Court of Criminal Appeals on petition in error filed either by the applicant or the state within thirty (30) days from the entry of the judgment.

**2.** The suggestion for rehearing en banc was transmitted to all of the judges who are in regular active service as required by Fed. R.App.P. 35. No member of the panel and no judge in regular active service on the court requested that the court be polled on rehearing en banc so the suggestion for rehearing en banc is also denied.

■ The issue remains whether Mr. Williams' federal habeas petition was timely filed based upon any tolling associated with an appeal from the denial of state post-conviction relief. A state application is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, — U.S. —, —, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000). Here, Mr. Williams "properly filed" his notice of appeal within ten days from the date of the district court's denial of his application, as required by OCCA Rule 5.2(C)(1). Although he failed to perfect his appeal by filing a petition in error and supporting brief within thirty days as required by OCCA Rule 5.2(C)(2), he is entitled to toll thirty days from the district court's denial of his post-conviction application for two independent reasons. First, only after the thirty-day deadline has passed without a petition in error and supporting brief could it be said that Mr. Williams' appeal was no longer "properly filed" in the OCCA. Second, we recently have held that "regardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner could have sought an appeal under state law." *Gibson v. Klinger*, 232 F.3d 799, 804 (10th Cir.2000).

When Mr. Williams filed his application for state post-conviction relief on August 3, 1998, he tolled the one-year limitation period with seventy-eight days remaining. *Williams*, 229 F.3d at 1311. The limitation period was tolled through the denial of his application (September 9, 1998), and during the next thirty days (October 9, 1998). Thus, the limitation period was tolled through October 9, 1998, with seventy-eight days remaining. Accordingly, Mr. Williams' December 17, 1998, federal habeas petition, filed sixty-eight days later, was timely, and the case must be reversed and remanded to the district court for further disposition on the merits.

IT IS SO ORDERED.